UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GLOVER,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:14-cv-00719-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff David Glover ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI, respectively, of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 7, 10).

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed applications for disability insurance and supplemental security income benefits on October 12, 2010. AR 21. In both applications Plaintiff alleged disability beginning on August 15, 2010. The Commissioner initially denied the claims on March 25, 2011, and upon reconsideration on June 20, 2011. AR 21. Plaintiff filed a timely request for a hearing. On November 16, 2012, Plaintiff, represented by Jeffrey Milam, testified at the hearing. AR 21. On December 10, 2012, Administrative Law Judge ("ALJ") William Thompson denied Plaintiff's applications. AR 31. On March 12, 2014, the Appeals Council denied review. AR 1. This appeal followed.

**Hearing Testimony**

ALJ Thompson held a hearing on November 16, 2012, in Stockton, California. AR 37-56. Plaintiff appeared and testified. AR 39. He was represented by attorney Jeffrey Milam. AR 39. Impartial Vocational Expert ("VE") Stephen Schmidt also appeared and testified. AR 39.

Plaintiff was born on August 14, 1959, and was fifty-three years old at the time of the hearing. AR 40. At five feet eleven inches tall, Plaintiff weighs 195 pounds and is right handed. AR 40-41. Plaintiff lives in a mobile home with his friend who is eighty-seven years old; due to his friend's age related limitations, Plaintiff attempts to take care of the house as much as he can. AR 45.

Plaintiff completed twelfth grade and is able to communicate in English. AR 29. Plaintiff is a former dishwasher and pool service technician. AR 53. He testified that he last worked in October of 2010. AR 41. Plaintiff alleges he has been unable to work since 2010 due to right shoulder impairment, high blood pressure, and mild plantar fasciitis. AR 42-56.

When asked about his physical impairments, Plaintiff explained that he used to receive cortisone shots but he now takes prescribed Norco and Ibuprofen pills when necessary for his shoulder pain. AR 47. Plaintiff's physician, Dr. Cash, has advised Plaintiff to do exercises for his shoulder and has recommended shoulder replacement surgery, which Plaintiff declined because of insufficient funds and inadequate insurance. AR 51-53. Plaintiff previously had surgery on his right shoulder approximately twenty-three years ago, and an additional surgery on his left shoulder. AR 44. Due to

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

his impairments, Plaintiff stated that he can stand about an hour, sit for three to four hours, walk no more than a quarter mile, and reach out from his shoulder for less than half a day for no more than ten to fifteen minute periods. AR 46, 50.

When asked about his daily activities, Plaintiff testified that he performs household chores, such as vacuuming and mopping but it takes him longer than a "normal person" to complete these tasks. AR 45. He is able to cook and prepares simple meals with use of a microwave. AR 46. Plaintiff spends the remainder of his time lying down or sitting and watching TV. AR 47. Plaintiff drives and grocery shops. AR 48. He is able to lift a gallon jug into a grocery cart, and can carry a bag of groceries with assistance. AR 48.

Thereafter, the ALJ elicited the testimony of VE Schmidt. AR 53. The VE testified that Plaintiff's past jobs were classified as dishwasher, medium, and swimming pool servicer, medium. AR 53. The ALJ asked VE Schmidt hypothetical questions contemplating an individual of the same age, education, language, and work background as Plaintiff. AR 53. This individual could lift fifty pounds occasionally and twenty-five pounds frequently; stand and walk in combination for at least six hours in a day; sit at least six hours in a day; perform postural activities frequently, except climbing ladders, ropes or scaffolds; and use his left non-dominant arm and hand without restriction, but the use of the right dominant hand and arm was limited to frequent manipulative activities like grasping, twisting, and handling. AR 54. The VE testified that that this person could perform such work as an information clerk, officer helper, or parking attendant. AR 54.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person was limited to Plaintiff's testimony. AR 54. The VE testified that there were no jobs which could be performed with those limitations. AR 54.

Finally, Plaintiff's attorney asked the VE to consider the same individual from the ALJ's first hypothetical except that this person is limited to only occasional use of the right dominant extremity for all activities including reaching forward, or in any direction. AR 55. The VE testified that there were no jobs which could be performed with those limitations. AR 55.

**Medical Record**

The entire medical record was reviewed by the Court. AR 303-407. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-31. More particularly, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and Plaintiff had not engaged in any substantial gainful activity since August 15, 2015. AR 23. Further, the ALJ identified mild right shoulder osteoarthritis, status post-surgery as a severe impairment. AR 23. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 24.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform between light and medium work, but with the additional limitations that Plaintiff can stand and walk in combination for at least six hours and sit for at least six hours; perform postural activities frequently, but should not be required to climb ladders, ropes, or scaffolds; use the left, non-dominant arm and hand without restriction; and use the right, dominant arm and hand only for frequent manipulative activities such as grasping, twisting, and handling. AR 24.

The ALJ found that Plaintiff is unable to perform any past relevant work. AR 29. However, the ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy, including information clerk, office helper, and parking attendant. AR 30. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 30.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); see also *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2002).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the burden of proof to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his opening brief, Plaintiff contends that the ALJ erred in evaluating the treating physician evidence. (Doc. 15 at 8).

## DISCUSSION[3]

**1. The ALJ Properly Discounted Plaintiff's Treating Physician**

Plaintiff challenges the ALJ's disability finding for failing to provide specific and legitimate reasons for rejecting the opinions of his treating physician Dr. Cash. (Doc 15 at 8). The Commissioner

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

contends however that the ALJ properly considered the medical opinions and permissibly gave greater weight to the opinions of the non-treating examining and non-examining sources. (Doc.16 at 10).

### A.   Dr. Cash

Plaintiff sought treatment from Dr. Cash at the Modesto Orthopedic Group beginning in February of 2010, for evaluation of his right shoulder. AR 323. Dr. Cash assessed that Plaintiff had shoulder impingement and an inability to use the upper extremity normally with fair range of motion and present but weak motor function; he recommended home exercise and an MRI scan to rule out a rotator cuff tear. AR 323. In March of 2010, Dr. Cash noted that the MRI scan revealed an otherwise intact structure but with "impingement-like change[s]." AR 322. He observed crepitus, pain, and limited functional motion but he noted that although Plaintiff was still symptomatic, he was improving with exercise. AR 322. He treated Plaintiff with corticosteroid injections and recommended continued home exercise. AR 322. In October of 2010, Dr. Cash noted persistent impingement of the right shoulder and recommended pain management for Plaintiff, which included continued home exercises and taking off work. AR 320.

In April of 2011, Dr. Cash opined that Plaintiff had "persistent shoulder dysfunction" and recommended continued home exercise and medication. AR 360. In June of 2011, Dr. Cash submitted a medical certification form to the Employment Development Department diagnosing Plaintiff with right shoulder impingement with pain, weakness, and limited range of motion and function preventing him from returning to regular work. AR 402. He estimated that Plaintiff would be able to return to work on August 1, 2011. AR 402. In August of 2011, Dr. Cash confirmed Plaintiff's limited functional motion in his right shoulder from persistent arthrosis with pain and crepitus. AR 390. Dr. Cash recommended to Plaintiff avoidance of those activities that worsen discomfort and that he was a candidate for shoulder surgery. AR 390. On August 3, 2011, Dr. Cash filled out a similar form for the Employment Development Department stating that Plaintiff's persistent shoulder dysfunction would prevent him from returning to his customary work until August 23, 2011. AR 400. In a similar form filled out on August 26, 2011, Dr. Cash diagnosed Plaintiff with shoulder arthritis and estimated Plaintiff could return to regular work on February 28, 2012. AR 399. In November of 2011, Dr. Cash submitted a Stanislaus County general assistance form diagnosing Plaintiff with right shoulder arthritis

and impingement with a prognosis of surgery and stated that Plaintiff was temporarily disabled from October 20, 2010, to February 28, 2012. AR 397.

In February of 2012, Dr. Cash examined Plaintiff and opined that he had "limited functional motion due to arthrosis, weakness, pain, and inability to use the upper extremity normally." AR 388. Dr. Cash reported that Plaintiff was functionally disabled in his high right upper extremity from all activities other than those minimal activities of daily living. AR 388. Dr. Cash completed another Stanislaus County general assistance form on February 28, 2012, diagnosing Plaintiff with right shoulder arthritis with a poor prognosis. AR 396. He opined that Plaintiff could not use his right arm and he could not perform tasks such as lifting, pushing, or pulling with his right extremity. AR 396. In July of 2012, Dr. Cash confirmed Plaintiff's "limited functional range of motion and some crepitus" in his shoulder which had "lateral epicondylitis-like symptoms." AR 384. Dr. Cash gave an impression of arthrosis of the right glenohumeral joint and lateral epicondylitis, and advised continued home exercises, medication, diminishing use of ethanol, and a reassessment for shoulder replacement surgery at Plaintiff's next visit. AR 384.

The ALJ assessed the findings of Dr. Cash as follows:

> I considered the work excuses and "disability" indications during treatment. These are on issues reserved to the Commissioner and are very non-specific. They are not supported by the only conservative treatment and somewhat good activities of daily living. They are given reduced weight in relation to the medical record.

In making these findings, the ALJ summarized Dr. Cash's opinion as follows:

> In June 2011, Robert M. Cash, M.D., completed two statements, indicating that the claimant was disabled and could not return to his regular and customary work due to right shoulder, persistent pain and weakness, with dysfunction. He initially excused the claimant from work until August 2011. He confirmed this statement in August 2011. He opined that the claimant could return to work later that month. However, later that month, he confirmed the work excuse and indicated that the claimant needed continued use of pain medication and needed to avoid activities, which worsened discomfort. While the claimant was a candidate for surgery, he did not have insurance. He indicated that the claimant was estimated to be able to return to his regular or customary work in February 2012. In November 2011, Dr. Cash confirmed his prior work excuses. He indicated that the claimant had limited function of the right shoulder, with no use of the right, upper extremity and no heavy lifting. Dr. Cash again confirmed his statements in February 2012. He stated that the claimant was unable to use the right arm due to arthritis and pain in the right shoulder. He could not lift, push, or pull. The disabled opinions continue to be on issues reserved for the Commissioner. Moreover, the more specific

functional aspects of these opinions are also vague. Furthermore, Dr. Cash's complete preclusion from use at times is actually more restrictive than even the claimant's own statements. These opinions are not supported by the minimal radiological findings and conservative treatment. Dr. Cash's opinions are given reduced weight.

AR 28, 29, internal citations omitted.

### B. Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can do this by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998); *accord Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ must do more than offer conclusions; he must set forth his own interpretations based on substantial evidence in the record and explain why they, rather than the doctors', are correct. *Reddick*, 157 F.3d at 725; *accord Thomas*, 278 F.3d at 957.

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2); *see also,* 20 C.F.R. § 416.927(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); 20 C.F.R. § 416.927(c)(2)(i)-(ii). Additional factors relevant to evaluating a physician's medical opinion includes the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. 20 C.F.R. § 404.1527(c)(3)-(6); 20 C.F.R. § 416.927(c)(3)-(6). In any event, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Thomas*, 278 F.3d at 960.

### C.   The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues the ALJ did not attach appropriate weight to the opinion of his treating physician. The Court disagrees. The ALJ reviewed the entire medical record, and reasonably gave the greatest weight to the opinions of Dr. Vesali, the internal medicine consultative examiner, and Drs. Fast and Kalen, the non-examining physicians who performed an assessment of Plaintiff's RFC. AR 27-29. These independent physicians' opinions were consistent with the medical record, which showed mild objective findings, minimal radiological findings with no evidence of tears, and conservative treatment. AR 25-29. Further, in rejecting the opinion of Plaintiff's treating physician, the ALJ provided specific and legitimate reasons for doing so.

///

### i.     Dr. Vesali

Examining physician Fariba Vesali, M.D., examined Plaintiff on March 8, 2011. Plaintiff reported constant right shoulder pain and a history of left shoulder pain. AR 327. Dr. Vesali noted Plaintiff had previous separate arthroscopic surgeries performed on both shoulders. AR 327. Plaintiff told Dr. Vesali that he rides a motorcycle and that he is able to cook, do the dishes, and vacuum if he takes his pain medicine. AR 328.

Upon Dr. Vesali's examination, Plaintiff had no difficulty getting on and off the examination table, untying his shoes and taking them off and on, signing his name, or picking up a paperclip. AR 328. Plaintiff had elevated blood pressure. AR 328. He did not have an abnormal gait, and while he was able to walk on his heels, he did report right heel pain. AR 328. Plaintiff had no tenderness or inflammation in his back or bilateral shoulders, and had a generally normal range of motion of his shoulders with mild tenderness. AR 329. Further, Plaintiff had tenderness on the plantar surface of his right calcaneus, but otherwise there was no tenderness in the bilateral lower extremities. AR 330.

Dr. Vesali diagnosed Plaintiff with chronic right shoulder pain status post right shoulder surgery, mild right shoulder osteoarthritis, and mild right plantar fasciitis. AR 330. Dr. Vesali opined that Plaintiff could walk, stand, and sit without limitations. AR 330. He could lift and carry fifty pounds occasionally and twenty-five pounds frequently due to chronic right shoulder pain and osteoarthritis. AR 330. Plaintiff could do postural activities without limitation. AR 330. Further, Plaintiff could do frequent manipulative activities with the right hand, with the exception of occasional overhead activities due to mild right shoulder osteoarthritis. AR 330.

The ALJ gave Dr. Vesali's opinion "significant weight" because it was well supported by the minimal objective findings, which consisted of generally mild tenderness, and conservative treatment. AR 28. Further, the ALJ found Dr. Vesali's opinion supported by the minimal radiological findings and consistent with other record evidence. AR 28. However, he gave the reaching limitations reduced weight due to the normal range of motion results found during the examination. AR 28.

///

///

### ii. Dr. Fast

On March 24, 2011, Dr. Fast performed a medical consultation assessment of Plaintiff's RFC. After reviewing the treatment evidence and the record, he opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds. AR 333. Plaintiff could sit, stand and walk for about six hours in an eight-hour workday. AR 333. Plaintiff had no limitations on pushing or pulling, including the operation of hand and foot controls. AR 333. However, Plaintiff was limited to occasional overhead reaching due to right shoulder pain. AR 334. Dr. Fast opined that Plaintiff had a relatively mild functional impairment and agreed to a medium RFC determination. AR 338.

The ALJ gave Dr. Fast's opinion "generally significant weight" but somewhat less weight than Dr. Vesali's because the overhead reaching limitations in Dr. Fast's report were not supported by the lack of range of motion findings in Dr. Vesali's examination. AR 28. Further, the ALJ found that Dr. Vesali's manipulative findings allowed more for the tenderness findings, and gave Plaintiff "maximum reasonable benefit of the doubt in light of the minimal treatment record." AR 28.

### iii. Dr. Kalen

On June 20, 2011, Vicki Kalen, M.D., performed a case analysis review of Plaintiff's RFC determination. After reviewing the treatment evidence and the record, Dr. Kalen affirmed the initial RFC determination that Plaintiff is capable of performing the equivalent of medium work. AR 367. The ALJ weighed Dr. Kalen's opinion in the same manner as Dr. Fast's opinion. AR 28.

**D.  The ALJ Provided Specific and Legitimate Reasons for Discounting Plaintiff's Treating Physician**

The ALJ provided specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician in favor of Plaintiff's examining and non-examining physicians. In doing so, the ALJ reasonably gave reduced weight to the opinion of Dr. Cash in determining the impact Plaintiff's physical impairments had on his ability to work.

First, the ALJ discounted Dr. Cash's opinion because it was unsupported by objective medical findings, including the radiological findings. AR 27. The MRI report in the record indicated previous repair of the anterior labrum, tendonitis, and osteoarthritic changes in the acromioclavicular and

glenohumeral joints; however, the examiner impressed that the evidence did not suggest cuff tear or impingement in the neutral position, and the heterogeneous signal overlying the glenoid labrum and the proximal aspect of the bicipital tendon possibly reflected internal degeneration or inflammation. AR 26, 315, 326. Dr. Cash also noted that the MRI scan revealed Plaintiff's shoulder structure was "otherwise intact." AR 321-322. Dr. Cash diagnosed Plaintiff with end stage arthrosis of the right glenohumeral joint and assessed that Plaintiff had an inability to use his upper extremity. AR 388. However, the MRI report revealed no evidence of tears and was consistent with mild-to-moderate radiological findings. Further, examining physician Dr. Vesali observed that Plaintiff had no difficulty getting on and off the examination table, untying his shoes and taking them off and on, signing his name, or picking up a paperclip. AR 328. Plaintiff did not have tenderness or inflammation in his back or bilateral shoulders. AR 329. Plaintiff also had generally normal range of motion of his shoulders and mild tenderness in his bilateral shoulders. AR 27. In addition, State agency non-examining physicians Drs. Fast and Kalen both opined that Plaintiff had a mild impairment of function and retained the RFC to perform medium work. AR 338.

When an examining physician provides "independent clinical findings that differ from the findings of the treating physician" such findings are "substantial evidence. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985); *accord Andrews*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985). Independent clinical findings can be either (1) different diagnoses from those offered by another physician and that are supported by substantial evidence, *see Allen*, 749 F.2d at 579, or (2) findings based on objective medical tests that the treating physician has not considered, *see Andrews*, 53 F.3d at 1041. The ALJ correctly determined that the independent findings of Drs. Vesali, Fast and Kalen were substantial evidence and as a result Dr. Cash's opinion was no longer entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). The factors that the ALJ could consider in rejecting Dr. Cash's testimony included: (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a

medical opinion. 28 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). With respect to Plaintiff's physical impairments, the ALJ reasonably gave greater weight to Dr. Vesali's opinion, which assessed functional limitations that were more in line with the mild findings in the record. AR 28, 327-331. The ALJ reasonably considered the fact that Dr. Vesali's opinion, and her relatively mild objective findings upon examination, were clearly at odds with the extreme limitation opined by Dr. Cash. AR 27-29. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, viewing the record as a whole indicates there was substantial, objective clinical evidence of mild impairment. Accordingly, the record supports the ALJ's decision to reject the treating opinion of Dr. Cash in favor of the examining opinion of Dr. Vesali and the non-examining opinions of Drs. Fast and Kalen.

Second, the ALJ discounted Dr. Cash's opinion because it was more restrictive than Plaintiff's own statements. Dr. Cash's opinion stated that Plaintiff was functionally disabled and restricted him from using his right upper extremity from any activity other than those minimal activities of daily living. AR 388. He opined that Plaintiff could not perform tasks such as lifting, pushing, or pulling with his right extremity. AR 396. However, Plaintiff reported activities of daily living which the ALJ found to be greater than one would expect for a totally disabled person. Plaintiff reported he can vacuum one room at a time, mop, and use the microwave to cook simple meals. AR 45-46. He is able to drive and grocery shop, and while he usually requests assistance, he is able to lift a gallon jug of milk and carry a bag of groceries from the store to his car. AR 48. He also reported he visits with his son when he can. AR 46. He told Dr. Vesali in March 2011 that he does dishes and rides a motorcycle. AR 327. Further, in an exertion questionnaire from December 2010, Plaintiff reported that he was able to lift pots and pans when he cooks, lift his fifteen pound dog once a day, carry his laundry bag on his back while riding his bike two miles once a week, and clean his bathroom twice a week. AR 251. In a pain questionnaire also from December 2010, Plaintiff reported that he was able to use public

transportation and run errands, such as going to the post office or grocery store without assistance. AR 268.

Plaintiff's own testimony undermined the nature of his treatment with Dr. Cash. Dr. Cash's finding that Plaintiff was completely precluded from use at times was more restrictive in light of the Plaintiff's own statements. This was a valid consideration, and the ALJ correctly observed that the medical evidence in the record did not support this degree of limitation. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole"). For this reason, the ALJ was entitled to discount Dr. Cash's opinion as overly restrictive.

Third, the ALJ discounted Dr. Cash's opinion because it was unsupported by Plaintiff's conservative treatment. Dr. Cash treated Plaintiff for his right shoulder impairment with pain medication and home exercises. In August of 2011, Dr. Cash advised Plaintiff that he was a candidate for shoulder surgery but Plaintiff did not undergo the procedure because of insurance issues. AR 390. In July of 2012, Dr. Cash further advised that at Plaintiff's next visit he should be reassessed for surgery. AR 384.

While Plaintiff was able to see his orthopedist on a regular basis, he was not prescribed other treatment modalities outside of medication and home exercises. Plaintiff did receive corticosteroid injections from Dr. Cash post MRI assessment, however this treatment was given and ceased prior to Plaintiff's alleged onset date. AR 27, 321-322. After treatment, Plaintiff reported that the cortisone shots helped "a little" and the medication helped "a lot." AR 44, 47. Additionally, Plaintiff reported to Dr. Vesali that taking Vicodin helped to lessen his shoulder pain. AR 327. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Overall, Plaintiff's assessment reports reflected conservative treatment with mild objective medical findings, and the ALJ correctly noted that the evidence did not show the sort of intense treatment regimen that one would expect to find for a totally disabled person, given the very significant functional limitation opined by Dr. Cash.

Fourth, the ALJ determined that Dr. Cash's opinion was unreliable because his range of motion findings during Plaintiff's treatment were vague. AR 28. In his first evaluation, Dr. Cash examined that Plaintiff had a history of an "inability to use the upper extremity normally," but he observed that Plaintiff's motion was fair and his motor function was present although weak. AR 323. On March 24, 2010, Dr. Cash noted in Plaintiff's history that he was "still symptomatic, but improving with exercise slowly," and examination confirmed "limited functional motion." AR 322. However, on October 20, 2010, Dr. Cash noted that Plaintiff had a history of "inability to use the upper extremity." AR 320. On April 5, 2011, Dr. Cash noted in Plaintiff's history that his "shoulder function continues to be limited" and examination confirmed "limited mobility." AR 360. On August 22, 2011, Dr. Cash further confirmed in his examination that Plaintiff had "limited functional motion." AR 390. On February 6, 2012, Dr. Cash examined that Plaintiff had "limited functional motion" and an "inability to use the upper extremity normally," but he proceeded to diagnose Plaintiff with an inability to use his upper extremity for any activity. AR 388. In his last assessment on July 23, 2012, Dr. Cash confirmed in physical examination that Plaintiff had "limited functional range of motion." AR 384.

The ALJ found Dr. Cash's conclusions about Plaintiff's functional limitations were vaguely stated. The ALJ explained that Dr. Cash did not provide the specific functional aspects of Plaintiff's range of motion limitations, and when read in full and in context, he found them inconsistent throughout the treatment record. AR 28. While a treating physician opinion can be entitled to greater weight, an ALJ may reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). ALJ Thompson explained that he gave "significant weight" to Dr. Vesali's opinion because her examination showed Plaintiff had generally normal range of motion of his shoulders. AR 27. Further, there were no other abnormal findings other than mild tenderness in Plaintiff's bilateral shoulders. AR 27-28. Additionally, the assessment reports from non-examining physicians Drs. Fast and Kalen showed mild impairment and both opined Plaintiff could perform the equivalent of medium work activities. AR 336, 367. The ALJ's interpretation of the record is entitled

to deference. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

Contrary to Plaintiff's argument, the ALJ weighed the medical opinions, discussed them, and articulated legitimate reasons for assigning their weights as set forth in the opinion. While the evidence may be subject to alternate interpretations, the Court may not simply substitute the ALJ's opinion. The ALJ's treatment of Dr. Cash's opinion is not erroneous, is supported by the record, and therefore must be affirmed. *See Thomas*, 278 F.3d at 954. Accordingly, the Court will not reverse or remand the ALJ's decision.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, David Glover.

IT IS SO ORDERED.

Dated:   **June 26, 2015**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE